UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETTY CLARK,

    Plaintiff,                                    Civil Action No. 08-11674

v.                                           HON.  LAWRENCE P. ZATKOFF
                                              U.S. District Judge
                                              HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Betty Clark brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further proceedings consistent with this report, and that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On March 21, 2005, Plaintiff filed an applications for DIB and SSI, alleging disability  as of March 1, 2005 (Tr. 40-42, 345-347).  After the initial denial of her claim,

Plaintiff requested an administrative hearing, held on July 12, 2007 in Flint, Michigan before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 351). Plaintiff, represented by attorney Jeffrey Atkin, testified, as did Vocational Expert ("VE") Pauline McEachin (Tr. 354-366, 366-371). On July 24, 2007, ALJ Sobrino, denying the application for benefits, found that Plaintiff was capable of performing her past relevant work as a security guard (Tr. 17-18). On February 28, 2008, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on April 21, 2008.

## BACKGROUND FACTS

Plaintiff, born February 2, 1977, was 30 when the ALJ issued her decision (Tr. 30). She completed 11th grade, working previously a fast food worker, housekeeper, sales clerk, and security guard (Tr. 80, 76). Her application for benefits alleges disability as a result of scoliosis (Tr. 75).

### A.     Plaintiff's Testimony

Plaintiff, a Flint, Michigan resident, testified that she lived in a single family home with her four children (Tr. 354-355). She alleged that she was unable to stand for more than 30 minutes, walk for more than an hour, or sit for more than 20 minutes (Tr. 355). She also alleged difficulty bending, stooping, kneeling, lifting, reaching, and climbing stairs, testifying however that her ability to perform fine manipulations was unimpaired (Tr. 356).

Plaintiff claimed that leg pain and numbness prevented her from pushing a grocery cart or performing household tasks (Tr. 357, 359). She denied participation in clubs or organizations but reported that she received visits from friends and relatives (Tr. 358).

Plaintiff testified that she had not traveled more than 75 miles from her home since the March, 2005 alleged onset of disability, but indicated that she continued to perform daily self-care tasks and drive on a regular basis (Tr. 358-359).

Plaintiff alleged that medication side effects caused headaches, blurred vision, and nausea (Tr. 360, 365). She denied overnight hospital stays, but indicated that she sought emergency treatment twice since becoming disabled (Tr. 361). Plaintiff indicated that physical therapy had improved her condition modestly (Tr. 361). In response to questioning by her attorney, Plaintiff testified that she experienced debilitating headaches three to four days a week (Tr. 362). She stated that she was never "pain free," but instead experienced varying levels of discomfort (Tr. 363). On a scale of one to ten, Plaintiff estimated that she experienced level ten pain five days a week, reporting that her condition was exacerbated by increased activity (Tr. 364). Plaintiff opined that since March, 2005, her back condition was essentially unchanged but that leg problems had worsened (Tr. 365).

### B.  Medical Evidence

### 1. Treating Sources

In February, 2005, Plaintiff sought emergency treatment for lumbar back pain (Tr. 86). She was released after receiving a neck brace and prescriptions for Lortab, Ibuprofen 800, and Flexeril (Tr. 87). Treating notes from the same month show that Plaintiff lay on the exam table "rocking back [and] forth crying" during the course of her examination (Tr. 309). Imaging studies performed the following month showed "mild dextroscoliosis of the lumbodorsal junction" (Tr. 320). In April, 2005, Plaintiff reported improvement after

receiving prescriptions for Robaxen, Flexeril, Darvocet, and an antidepressant (Pamelor) (Tr. 304, 307). Treating notes from June, 2005 state that a recent MRI showed the absence of nerve damage (Tr. 297). Based on the MRI results, as well as unremarkable EMG findings, Nael M. Tarakji, M.D. opined that conservative treatment was appropriate, prescribing physical therapy (Tr. 331). Treating notes from the same month indicate that Plaintiff experienced depression but had discontinued taking Prozac (Tr. 296, 299). A November, 2005 EMG of the upper right extremity showed normal results (Tr. 327). In December, 2005, Plaintiff requested pain medication for continued back pain (Tr. 284). Treating notes indicate that Plaintiff cried during the examination "secondary to back pain" (Tr. 285). James C. Culver, M.D. remarked that the May, 2005 MRI, discussed *supra*, showed a small cyst at L-1, (Tr. 326).

In January, 2006, Dr. Culver reported that Plaintiff's "self-rating of pain ha[d] been reduced from ten to seven" after receiving epidural steroid injections (Tr. 322). Notes from a March, 2006 examination by "Physician In-Home Services" indicate that Plaintiff continued to experience back pain (Tr. 113). In April, 2006 Linval Fleetwood, M.D. remarked that Plaintiff reported short-term relief from steroid injections (Tr. 118). In June, 2006, Dr. Tarakji noted that recent EMG testing showed no evidence of radiculopathy, also noting that a brainstem auditory evoked response and EEG studies were also unremarkable (Tr. 116-117, 337-340). In August, 2006, Plaintiff again sought treatment for symptoms consistent with lower back pain (Tr. 181). The following month, Dr. Tarakji noted that Plaintiff had "headache[s] under control using the prophylactic treatment" (Tr. 336).

October, 2006 physical therapy discharge notes show that Plaintiff "felt much better" after participating in therapy (Tr. 102). In February, 2007, Plaintiff reported continued joint stiffness (Tr. 127). In June, 2007, Dr. Kontamwar submitted a medical source statement on Plaintiff's behalf, opining that she was unable to lift ten pounds or stand or walk for more than two hours in an eight-hour workday (Tr. 279). Treating notes from the same month indicate that Dr. Tarakji renewed prescriptions for Neurontin, Parafon Forte, Pamelor, and Fluoxetine (Prozac) (Tr. 334).

### 2. An Assessment Performed on Behalf of the SSA

In April, 2005 a Residual Functional Capacity Assessment of Plaintiff's treating medical records found that she retained the ability to lift 20 pounds occasionally and ten pounds frequently; walk, stand, or sit for six hours in an eight-hour workday; and push and pull without limitation (Tr. 91). Plaintiff's postural limitations consisted of frequent (as opposed to *constant*) climbing, balancing, stooping, crouching, and crawling, and occasional kneeling, but found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 92-93). The Assessment concluded by finding Plaintiff's allegations of limitation "not fully credible" (Tr. 95).

### C.    Vocational Expert Testimony

VE Pauline McEachin classified Plaintiff's former work as a fast food worker and housekeeper as unskilled at the light exertional level; work as a retail sales clerk as exertionally light (medium as performed); and work as a security guard as unskilled and

sedentary[1] (Tr. 366) ALJ Sobrino posed the following question to the VE:

> "[A]ssume an individual [who] has a work background that's described in your analysis and assume a person who has an 11th grade education, was born in 1977. Assume a person who cannot lift, carry, push or pull more than ten pounds frequently; no more than 20 pounds occasionally. Assume a person who is able to stand and walk about six hours in an eight hour workday; and sit up to eight hours in an eight hour workday with typical breaks and a lunch period. The person should not climb ladders, ropes, or scaffolds; should not need to kneel, crouch, or crawl; can occasionally climb stairs; can only rarely bend, rare is not never, but it's less than a third of a workday. The person should not need to reach overhead or be exposed to hazard; should not need to operate foot or leg controls; there should be no exposure to extremes of temperature or humidity. the person should not have to drive as a work duty. Could a person with these limitations do any of the jobs that Ms. Clark did?"

(Tr. 367). The VE replied that the hypothetical individual could perform Plaintiff's former fast food and security guard positions (Tr. 368). The VE found that if the limitations were amended to allow the individual to alternate position for a few minutes approximately every 20 minutes, the fast food position would be eliminated (Tr. 368).

In addition, the VE testified that the individual could perform the *sedentary*, unskilled work of a video surveillance monitor (2,000 positions in the State of Michigan), visual inspector (2,200), and information clerk (1,200) (Tr. 368). The VE found further that the individual could perform the exertionally *light*, unskilled work of an information clerk

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

(1,700), visual inspector (1,500), and inspector (4,500) (Tr. 369). In closing, the VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT").

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of headaches and "low back pain syndrome with right-sided sciatica as a result of dextroscoliosis" (Tr. 15). The ALJ noted that Plaintiff had received exclusively conservative treatment for scoliosis and that her headaches were "under control with medication" (Tr. 15). She found that Plaintiff retained the residual functional capacity ("RFC") to

> "lift, carry, push, and pull 10 pounds frequently, 20 pounds occasionally. She is able to stand/walk [six] hours per [eight]-hour workday. she is able to sit up to [eight]-hours per [eight]-hour workday. She should have the opportunity to alternate position for a few minutes approximately every 20 minutes. She should not climb ladders, ropes or scaffolds. She can occasionally climb stairs. She can stoop rarely, but should not kneel, crouch, or crawl. She should not reach overhead. She should not operate foot or leg controls, or drive as a work duty. She should not be exposed to extremes of temperature or humidity."

(Tr. 16). ALJ Sobrino concluded that Plaintiff could perform her past relevant work as a security guard (Tr. 17). Adopting the VE's job numbers, *supra*, the ALJ found that Plaintiff could also perform the sedentary work of a video surveillance monitor, visual inspector, and information clerk (Tr. 17).

The ALJ found that Plaintiff's "allegations of disabling symptoms [were] not fully substantiated," noting that EMG and EEG findings were normal (Tr. 17). The ALJ

concluded that although Plaintiff alleged frequent crying spells, she had not been diagnosed or received treatment for a mood disorder (Tr. 17). Citing Dr. Tarakji's findings, the ALJ noted that Plaintiff's headaches were well controlled with prophylactic treatment (Tr. 17).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes three arguments for reversal of the administrative decision, contending first that the hypothetical question composed by the ALJ did not account for her full degree of limitation. *Plaintiff's Brief, Docket #9* at 6-7 (*citing Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)). Next, citing *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004), she contends that the ALJ failed to explain her reasons for rejecting Dr. Kontamwar's

June 11, 2007 opinion that she was unable perform even sedentary work. *Id.* at 7-9. Last, Plaintiff argues that the ALJ's credibility determination is based on an erroneous reading of the record. *Plaintiff's Brief* at 10-12.

The validity of the hypothetical question hinges on the ALJ's treating physician analysis and credibility determination. The Court will therefore address Plaintiff's latter arguments first.

### A. The Treating Physician Analysis

Plaintiff contends that the ALJ gave short shrift to Dr. Kontamwar's June, 2007 assessment of her limitations, arguing that the ALJ failed to support her rejection of the treating physician's opinion with record evidence. Citing *Wilson, supra,* 378 F.3d 541, 543-546 (6th Cir. 2004), Plaintiff argues that the ALJ's failure to provide "good reasons" for rejecting Dr. Kontamwar's opinion constitutes reversible error. *Id.* at 9.

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence which would allow the ALJ to accord less than controlling weight to the treating source opinion, he must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson,* 378 F.3d 541, 544 (*citing* 20 C.F.R. § 404.1527(d)(2)).

The ALJ acknowledged the presence of a "disability opinion," noting that "Dr.

Kontamwar . . . opined that the claimant is incapable of even sedentary work" (Tr. 17). While the fact that Plaintiff's benefit application was denied suggests that Dr. Kontamwar's assessment was rejected, at no point does the administrative decision actually state that the opinion was rejected either in part or whole. Proceeding on the assumption that Dr. Kontamwar's opinion was rejected, the ALJ failed to provide "good reasons" for declining to adopt the physician's opinion disability opinion.

In an abundance of fairness to the ALJ, a number of her stated reasons for the ultimate non-disability finding might also support her *de facto* rejection of Dr. Kontamwar's opinion. Her finding that imaging studies showed either unremarkable or only mildly abnormal findings is well supported by the record (Tr. 15). Likewise, she permissibly found that Plaintiff's claims of debilitating headaches stood at odds with Dr. Tarakji's findings that that the headaches were controlled by prophylactic treatment (Tr. 17).

Nonetheless, the Court is unable to cobble together an adequate treating physician analysis from various portions of the administrative opinion. For example, while the ALJ cites evidence standing at odds with Dr. Kontamwar's opinion, she makes no mention of the length or extent of the treating relationship - factors she is required to consider pursuant to 20 C.F.R. § 404.1527(d)(2). Further, while substantial evidence found elsewhere in record might support her determination, pursuant to *Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999), the failure to set forth "good reasons" for rejecting Dr. Kontamwar's opinion constitutes reversible error:

"'The requirement of reason-giving exists, in part, to let claimants understand

-11-

> the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

Moreover, it is unclear to this Court whether the ALJ rejected the treating physician's June, 2007 opinion in whole or only in part. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion." *Hardman v. Barnhart,* 362 F.3d 676, 679 -680 ( 10th Cir. 2004). As a general matter, the ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir. 2003); *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995).

### B. The Credibility Determination

Moreover, I agree with Plaintiff's argument that substantial evidence fails to support the ALJ's credibility determination. While the ALJ complied with the procedural requirements of the credibility determination as set forth in SSR 96-7p, her conclusion that Plaintiff's allegations of disability were not credible is undermined by misstatements of the record.[2] (Tr. 16-17)

---

[2]

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986)(*citing* SSR 96-7p). Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or

To be sure, substantial evidence supports the ALJ's finding of an absence of a neurological disorder and that Plaintiff's headaches were well-controlled with medication (Tr. 17 *citing* 116-117, 336-340). However, the ALJ's finding that "there is no diagnosis of or record of treatment for a mood disorder" (forming the basis of her rejection of Plaintiff's testimony that she often cried all day) is flatly contradicted by the record (Tr. 17). Treating records contain numerous references to a mood disorder. April, 2005 notes allude to both Plaintiff's depression and Prozac use (Tr. 296, 299-300). In September, 2005 Plaintiff was prescribed Zoloft for anxiety (Tr. 289). June, 2007 treating notes show that Dr. Tarakji renewed a prescription for Fluoxetine, a generic version of Prozac (Tr. 334). The presence of a mental health condition is further supported by treating notes indicating that on at least two occasions, Plaintiff wept (out of either pain or frustration) during medical examinations (Tr. 285, 309).

While courts generally cede enormous latitude to the administrative credibility determinations, *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993), an ALJ's decision must contain specific reasons for the findings of credibility, supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *see also Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001). As such, because the ALJ's conclusions are at least partially

---

functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

unsupported by the record, the customary deference given to her credibility determination is inappropriate.

### C. The Hypothetical Question

Again, the ALJ's failure to acknowledge Plaintiff's mental health treatment constitutes reversible error. Although Plaintiff was diagnosed and received treatment for psychological problems, the hypothetical question makes no mention of limitations as a result of depression or anxiety, invalidating the VE's Step Five conclusion that Plaintiff could perform job a limited range of sedentary work (Tr. 367). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." (internal citations omitted). *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987) *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

The ALJ's failure to acknowledge Plaintiff's mental impairments in crafting the hypothetical question impacts the ALJ's Step Four as well as Step Five findings. Generally, the hypothetical question's deficiencies, with nothing more, would not invalidate a Step Four finding that a claimant could perform her former work. ALJs are permitted but not required to use a VE in making a Step Four determination. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir. 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ."). Nonetheless here, the

hypothetical question's deficiencies present grounds reversal of both the Step Four and Step Five determinations. In addition to adopting the VE's job numbers in support of the Step Five conclusion, the ALJ explicitly stated that her finding that Plaintiff could perform her former work as a security guard was "per vocational expert analysis" (Tr. 17). The VE's findings, invalidated by the hypothetical question's deficiencies, do not constitute substantial evidence to support either a Step Four or Five determination.

Moreover, record evidence showing psychological problems, along with Plaintiff's testimony that she experienced frequent crying spells, placed the ALJ on notice of potential work-related impairments. Of course, Plaintiff bears the burden of establishing the presence of a work-related impairment. *Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir.1994). Further, Plaintiff's application for benefits list scoliosis as the sole basis of her claim (Tr. 75). Nonetheless,

> "'in any case where there is evidence which indicates the existence of a mental impairment,' an administrative law judge may *not* make an initial determination that the claimant is not disabled unless the administrative law judge has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.'"

*Brown v. Commissioner of Social Sec.*, 2008 WL 5090418, *8 (E.D.Mich. 2008)(*citing Montgomery v. Shalala,* 30 F.3d 98, 101 (8th Cir.1994))(internal citations omitted). *See also Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1048 (10th Cir.1993); 20 C.F.R. § 404.1520a. Likewise, the Sixth Circuit has recognized the "obligation [to consult] . . . 'if the claimant brings forth sufficient evidence to raise an inference that he

suffers from a mental impairment.'" *Marcum v. Commissioner, Social Security Admin.,* 2000 WL 92262, 4 (6th Cir. 2000)(*citing Owen v. Chater, Comm'r of Soc. Sec.,* No. 96-5571, 1997 WL 251918, *4 (6th Cir.1997)). Because here, the record supports Plaintiff's testimony of mental limitations, a remand for both a consultive examination and non-examining evaluations (Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment) is appropriate.

In closing, I note that the multiple errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits. In considering the results of the psychological evaluations, the ALJ may or may not find that substantial evidence supports a finding that Plaintiff is not disabled. Accordingly, the case should be remanded for further proceedings consistent with Sections **A-C**. of this analysis. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further fact-finding consistent with this report, and that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 14, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 14, 2009.

s/Susan Jefferson

Case Manager